ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

FEB 16 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT E. WINDSOR | Criminal Information<br><br>No. 1:16-CR-068 |

THE UNITED STATES ATTORNEY CHARGES THAT:

## Count One
### Health Care Fraud
### (18 U.S.C. § 1347)

1. Beginning at a date unknown, but no later than January 2010, through in or about July 2013, in the Northern District of Georgia and elsewhere, the defendant, ROBERT E. WINDSOR, a licensed physician, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, that is, by claiming to have performed health care services, well knowing and having reason to know that said materially false pretenses, representations, and promises were and would be false and fraudulent when made and that said omissions were and would be material.

### Background

At all times relevant to this Information:

2. The defendant, ROBERT E. WINDSOR, was licensed to practice medicine in Georgia, among other states. The defendant was the owner and operator of Georgia Surgical Monitoring, LLC, a Georgia medical practice.

3. Intra-Operative Monitoring (IOM) is a medical procedure in which a physician monitors nerve and spinal cord activity during a surgical procedure in order to minimize potential adverse effects to a patient's nervous system during surgery.

4. Under certain circumstances, health care benefit programs, including private companies providing health insurance, will pay all or a portion of the cost of IOM.

5. On or about July 1, 2007, the defendant, on behalf of Georgia Surgical Monitoring, LLC, entered into an Independent Contractor Agreement (the Contract) with American Neuromonitoring Associates, P.C., (ANA) a Maryland corporation, wherein the defendant agreed to provide IOM services as an independent contractor for ANA and its sister company, Impulse Monitoring Inc. (IMI).

6. Under the terms of the Contract, the defendant was to provide "on a real-time basis via on-line communication, the professional component of the monitoring services for patients" that were in surgery and assigned to him by ANA. At the conclusion of the surgery, the monitoring physician is responsible for submitting a Final Monitoring Report that details the monitoring that he or she performed. ANA and IMI were responsible for billing patients and health care benefit programs, as defined in Title 18, United States Code, Section 24(b),

for the services rendered, and, in turn, paid the defendant a fee per surgeries monitored. In submitting claims to health care benefit programs, ANA and IMI relied on information provided by the defendant regarding the IOM services that he had provided.

### The Scheme to Defraud

7. Beginning at an unknown time, but no later than January 2010, an employee of WINDSOR's company, R.G., a medical assistant, began providing IOM services in WINDSOR's place while impersonating WINDSOR. Specifically, R.G. used WINDSOR's log-in name and password on the IOM software in order to make it appear as if WINDSOR was monitoring the surgeries. In fact, R.G., who is not a doctor and was not permitted to perform IOM under the terms of the Contract, was monitoring the surgeries.

8. At the conclusion of the IOM procedure, a Final Monitoring Report is submitted. In the reports submitted by WINDSOR to ANA and IMI, WINDSOR, or someone signing the reports on his behalf and with his authorization, indicated that he had performed the monitoring, when in fact, as he knew, R.G. had in fact performed the monitoring.

9. Using the information contained in the Final Report, ANA and IMI submitted claims to health care benefit programs, seeking reimbursement for the services rendered by ANA/IMI and WINDSOR. In submitting their claims, ANA and IMI relied on the information in the Final Report which indicated that WINDSOR had performed the monitoring. If ANA/IMI had been made aware

that R.G. was actually performing the IOM, they would not have submitted the claims to the health insurance benefit programs.

10. As a result of his scheme, WINDSOR fraudulently obtained approximately at least $1.1 million from ANA and IMI, which had been paid to ANA and IMI from the health insurance benefit programs, from January 2010 through July 2013 for IOM services that WINDSOR falsely represented had been performed by him, when, in fact, he had not performed the services and was not entitled to payment.

### Execution of the Scheme

11. On or about March 9, 2011, in the Northern District of Georgia, the defendant, ROBERT E. WINDSOR, knowingly and willfully executed and attempted to execute his scheme to defraud health care benefit programs, including private companies providing health insurance, and to obtain money from health care benefit programs by means of materially false and fraudulent pretenses and representations, as described above, by submitting and causing to be submitted a Final Monitoring Report to ANA/IM, claiming to have provided IOM services for patient S.G. during a spinal surgery, when in fact he had not performed the monitoring. In turn, ANA/IMI submitted a claim for $5,520.00 to United Healthcare to cover the cost of the IOM procedure for beneficiary O.M.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## Forfeiture Provision

Upon conviction of the offense alleged in this Information, Defendant ROBERT E. WINDSOR shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), including but not limited to a money judgment representing the amount of proceeds obtained as a result of said offense.

If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461, to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

JOHN A. HORN
  *United States Attorney*

*/s/ Jamie L. Mickelson*
JAMIE L. MICKELSON
  *Assistant United States Attorney*
Georgia Bar No. 591094

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181